Next case up is Sims v. Bricker, 5-11-28. And Mr. Evans, are you ready to proceed? Good morning. Steve Evans, I represent the defendants in this case. And this case proceeded to trial with Vince Traub, Madison County, on the second amended complaint which alleged that about a half-day finish trial of the circuit court found in its original judgment that the 1987 wills were mutual. And that when Hildreth Morrison executed a new will and a new trust in April 2004, she breached the agreement from 1987 with her then-husband Howard to have mutual wills. We filed a motion to amend and set aside that judgment because in that judgment, Judge Harrison also made a finding that the 2004 will and trust that were executed by Hildreth resulted from undue influence by Lisa Bricker, who is one of the defendants in the case, as it stands now. And our concern at that time was that prior to the evidence being heard before the trial, Judge Harrison had a significant concern about the allegations of undue influence in the second amended complaint and essentially severed the undue influence issue from being tried before him at that time. We had filed a jury demand and, of course, on an undue influence claim to have the right to a jury trial. And the action was essentially one for an accounting and quiet title, which of course would be before the Court of Equity. And after a lengthy discussion, which we attached to the appendix, which of course is in the record, Judge Harrison went ahead and proceeded on the issue of whether or not the 1987 wills were mutual. So there's a separate count on undue influence. In the second amended complaint which was being tried, Judge Stewart, the undue influence claim, there was just one count in that complaint with a paragraph or two paragraphs that set forth the basis for undue influence. Did Judge Harrison require that a two-count complaint then wasn't their amended complaint filed with a separate count? Right. After discussing this with counsel on record, he then, and there was an off-record discussion by counsel about what to do in terms of proceeding that day, we came back on the record and said, we want a third amendment complaint filed alleging an undue influence claim, and we will only proceed today, I think it was July 6, 2010, on the issue of whether or not the 1987 wills were mutual. And that other count's still pending? That other count remains pending, yes. It remains pending because with the result of the amended judgment that was subsequently handed by Judge Harrison in December of 2010, it essentially renders moot, if that judgment is upheld, the issues in the undue influence claim. So we proceed to trial on the issue of mutual wills, and the standard view here is whether or not the amended judgment, and let me step back. After we filed a post-trial motion, we went back and argued that before Judge Harrison and pointed out that he had to do with the original judgment, he then entered an amended judgment in December of 2010, where he still included a finding of undue influence by Bruce Brecker as to Miller's 2004 state planning documents, but then stated that he was not relying on that and had no effect on his judgment that the 1987 wills were mutual. Now, we believe that the judgment is against the evidence because in March of 2004, Howard actually executed a new will, a new trust, which by law effectively revokes his 1987 will, renders it void, and we do not believe that he or his state representative at this time can now enforce the 1987 wills. And one of the reasons, I think, the pleading in this case was somewhat confusing. We had filed a motion to dismiss the prior trial, but one of the concerns we had was this merger of claims. It's important because when we discovered that Howard Morrison had done a new will in 2004, the end of influence claim could still survive as to Mildred's 1987 will if it was in fact revoked or redone because of undue influence. But what's before this court is whether or not the 1987 wills were mutual, and we believe with Howard executing a new will and a new trust in March of 2004, one month prior to Mildred executing the new estate documents, there's no legal basis or factual basis to enforce the 1987 wills as mutual. The 2004 state planning documents are part of the record. They were introduced into evidence at trial or before the trial. Another factor that the judge had before him was he was aware that Howard Morrison had filed a petition for dissolution of marriage for Mildred Morrison in 2006. He knew that Mildred Morrison pre-deceased Howard Morrison. So there's a number of significant factors here that indicate that the 1987 state planning, which the plaintiffs were attempting to enforce, had basically been rendered void by what both and we believe that because of the estate planning done in 2004, with Howard Morrison first revoking his 1987 will, that the admitted judgment finding that the 1987 wills were enforceable as mutual wills is against the manifest way to get it. And particularly in light of the fact that we believe the correct standard of review, the correct evidentiary basis here is by clear and convincing evidence. One other factor that the court should note, the 2004 will of Howard Morrison did not directly mirror the 1987 will. In other words, it was not something that was simply redone and re-executed with the same provisions. It changed the disposition of some of the property of Howard Morrison. He left all of his property to his trust, but in the trust, his sister, Eleanor Keyes, and her children would receive a remainder or residue of the trust depending on the dates of the people dying or other heirs dying. And that changes from what he did in 1987. So I think if the court, looking at this from the standpoint of, well, if we have a 2004 will that is the same as what someone did in 1987, and are we trying to enforce the agreement of the parties in 1987? The agreement was changed in 2004 by Howard. I think that that's a factor, again, that under the analysis of the Rausch case and the Merritt case that we cited in our brief showed that there's nothing from 1987 left to enforce by the time 2010 for the trial of this case. Finally, as we set forth in our brief, the other factor, again, if the court's looking at a situation where it's trying to determine whether or not to enforce the agreement of the parties in 1987, even with Howard's 2004 will, there's an issue as to whether or not these wills are mutual and cannot change if both parties are Mildred and had done so before he executed his 2004 will, then I believe that the court could review whether or not the 1987 wills were mutual. But here we have a situation where Mildred predeceases Howard, and I think that under all the mutual wills, when she predeceases him, the mutual wills are not enforceable, and her new estate plan in April 2004 was acceptable and did not violate any agreement from 1987. Thank you. All right. Thank you, Mr. Evans. And Mr. I hope I don't butcher this too bad, Motaz? Motaz. Is that right? Motaz. Motaz. Okay. See you, Simon. All right, Mr. Motaz. You may proceed. The only issue in this case is whether or not the 87 wills were mutual wills. The issue of undue influence, although there was a statement in the opinion, does not come into effect with regard to mutual will, and the judge specifically said it didn't enter into his decision. There was a second count which was filed which does raise the issue of undue influence, but the judge says we're going to try this one first on your mutual will because the decision on that may or may not negate the second count. Well, when you decide that it was a mutual will, then the second count is moved. Whether or not there was undue influence is immaterial as far as this appeal is concerned. The original wills that were set up were mutual cases that involved construction on mutual wills, and it's different in this respect. The provisions in the will that are mutual with regard to the real estate, this real estate was purchased or inherited by Howard prior to his marriage. The will was drawn saying that we want to take advantage of estate tax, minimize the estate tax, and so what they did is they drafted these wills, but in order to do that, Howard had to convey a certain amount of real estate to Milton. Well, the consideration for these wills was the conveyance of the real estate. And I think the evidence shows he only made that conveyance as part of this entire comprehensive estate planning that was going on, is that right? If he weren't going to do these wills, he didn't have to convey the real estate. That was the sole purpose of it. And the conveyance was made just a couple of days after the wills were executed, something like that? I'm sorry, what? The deeds were executed a couple of days after the wills were executed, is that what the evidence? Same day. Same day, okay. It was part of the whole transaction. So the wills also provided, and it contained a provision in there on the death of one, the other one would have a life estate, but there was a restriction on the life estate. They couldn't sell the real estate, the life tenant couldn't, without the consent of the child, Merrick. So there was a restriction on it. And Howard, who owned this property, gave up some control over that real estate because if Mildred died first and he got a life estate, he was restricted on property that originally was his. He couldn't do anything with it other than get the benefit of it for his life. But the intent was it would go to their daughter. He never intended that anything would go to Mildred's grandchildren, except that if something happened to their daughter, then the real estate would go half to his sister, or her heirs, and half to Mildred's grandchildren. Well, when Mildred conveyed her interest into an irrevocable trust, and we still don't have any reason why it was an irrevocable trust, but she provided in that that it would go on Howard's death to her daughter and to one grandchild, not all of the grandchildren, just one. So I don't think there's any question that if you look at the will and listen to what the attorney said, that the agreement was that, I'll give you this real estate, and here's the dispository scheme that we're going to follow to maximize what our daughter is going to get. And so I think there's, without question, it's a mutual will. Now, a good portion of the plaintiff's brief is spent on alleging that when Howard did a new will and trust, that that revoked the old one. Well, technically it does revoke it, but what he did is he conveyed it into a trust, and the trust had the same dispositive provisions that his will did. As to the real estate, anyway. The real estate, correct. And, you know, we talked about mutual wills being irrevocable, but it's more that provisions in those wills are irrevocable, and that's exactly what was important here. The important asset was in real estate, which was Howard's, by purchase and by his children, therefore the mutual wills. I think that's the only issue in this case, and if there are no other questions, that's all I have. Thank you, Mr. Motok. Thank you. All right, and Mr. Evans, any rebuttal? One of the things in this mutual will analysis that's complicated is to make sure that they truly are mutual, and in some respects, the 1987 wills were mutual. We don't believe that even if the court was not confronted with this 2004 will by Howard, that the court could find the judgment, the amended judgment, supported by clear and convincing evidence, that the 1987 wills were mutual under Rausch and Merrifactors, because there's a number of those five factors that the Rausch court set forth, there's a number of factors that are simply there. Mutual wills are not by law, but there are some rules and requirements that must be followed. But I want to just touch upon what my opposing counsel said with regard to the similar provisions in the 2004 will that Howard and his trust, which has to be considered, because the will poured everything into the trust, so it's really what's in that trust that matters here, and we have a change. In 1987, the trust provided that Mildred Morrison's grandchildren would be potential heirs and beneficiaries, depending again on the dates of death of certain other beneficiaries. Howard Morrison in 2004 changes that. Now, Howard Morrison in 2004 did establish the Mildred Morrison trust within his trust to try to mirror what he had attempted to do in 1987, and on, but he, it was simply a trust where the trustee could provide for the benefit of Mildred. Mildred had no right to consult or confer with Mary Beth Price for sale of any of the property that she did in 1987. So there's, again, there's a distinctive, substantive change in 2000 in the 2004 will of the trust of Howard that was not in place in 1987, but more importantly, Howard writes out of his trust Mildred's grandchildren in the 2004 will. So, you know, you have to almost look at it from the standpoint of if we're happy, if we've got an agreement to have mutual wills, and everybody sat down at the table at the lawyer's office in 1987, and Mildred and Howard used the same lawyers, accomplishes done, you know, hundreds of times probably every weekend in this state and every other state, they sat down and said, this is what we want to do in 1987. Well, in 2004, Howard used the son of the lawyer who did the will in 1987, and he said, I want to do something different. And Lisa Bricker testified at trial that in March 2004, Howard actually came to her and Mildred, Mildred was living with Lisa at that time because of some health problems, and said Mildred needs to do new estate planning documents. So we may, if the court assumes that there perhaps was an agreement that perhaps was enforceable in 1987, by the time we get to March 2004, when Howard changes his estate plan and adopts some similar, or some provisions, he doesn't adopt, he has some provisions in the 2004 documents that attempt to do what was attempted to do in 1987, but then he makes substantive changes. Now, Mildred is not at the table at that point in time, so there is no discussion, agreement in 19, or in 2004, that this is what they're going to do. And so the court is essentially left with, I believe the circuit court was left with a situation where this case is being tried on the issue of 1987 wills, the 2004 will is there, there's also this claim of undue influence, and again, the court was clear it wasn't relying on the undue influence, but if it wasn't relying on that, why was it in the original judgment, why does it even appear in the amended judgment? And I think it's important that perhaps the remedy that we saw here was only available with an undue influence finding. The problem was we didn't try that case in July 2010. There was no evidence of undue influence. In fact, in the record, and I didn't put a brief, but in the record, I objected at one point to some questions by opposing counsel to Ms. Jefferson's statement. Judge Harrison was pretty adamant, pretty clear, I'm trying this on mutual wills. So if we confine ourselves to that issue, that analysis, and if we take what opposing counsel has said this morning, that it's the similar provisions contained in the 2004 estate planning documents of Howard that are attempting to be enforced through the 1987 agreement, I think this court has to reverse and vacate the amended judgment and direct the circuit court to enter it under the favor of the defendants, because Howard's 2004 trust was not the same as Milbritt's 1987 will trust. There's been no new trial. Thank you. All right, thank you both for your briefs and arguments. We'll take this matter under advisement and issue our decision in another course. All right, next matter on the dollar.